## J. R. TERRY v. C. W. STAUFFER.

The writ of *quo warranto* is an order rendered in the name of the State, by a competent court, and directed to a person who claims or usurps an office in a *corpor tion*, inquiring by what authority he claims or holds such office. Art. 868, C P. This mandate is only issued for the decision of disputes between parties, in relation to the offices in *corporations*, as when a person usurps the character of *mayor of a city*, and such like.

With regard to offices of a public nature, that is, which are conferred in the name of the State, by the Governor, with or without the consent of the Senate, the usurpations of them are prevented and punished in the manner directed by the penal code.  ·

A *mandamus* is an order issued in the name of the State, by a tribunal of competent jurisdiction, and addressed to an individual, or corporation, or court of inferior jurisdiction, directing it to perform some certain act, belonging to the place, duty, or quality with which it is clothed.

An injunction is said to be a mandate obtained by plaintiff, prohibiting one from doing an act which, he contends, may be *injurious* to him, or *impair* a right which he claims. C. P. Art, 296. It is a conservatory act, an equitable remedy, which a party may obtain provisionally, on bringing his action. C. P. Art 208. And, in order to obtain it, the party applying for the same, must *state, under oath, the facts which*, according to his belief, *render an injunction necessary*.

APPEAL from the Third District Court of New Orleans, *Fellowes, J. John Henderson for plaintiff and appellant.*—J. R. Terry, as plaintiff, presented his petition to the Third District Court of New Orleans, setting forth the following facts:

That, whilst in the lawful possession and enjoyment of the office of register of voters, in and for the parish of Orleans, he was forcibly dispossessed of said office by C. W. Stauffer, defendant herein, under the pretext that he was lawfully removed therefrom, and the said Stauffer duly commissioned therefor by the governor of the State of Louisiana; that he was rightfully in possession and had a right to continue therein until the expiration of his term of office, to wit: 4th Monday in January, 1868, and to the enjoyment of the salary thereof, to wit: the sum of five thousand dollars per annum, according to law, unless sooner removed or suspended in the mode and manner prescribed by law; that he never has been legally suspended for any act of commission or omission in violation of his duties in the said office, nor has he ever been prosecuted by the attorney-general of the State for any malfeasance or misfeasance in office, as prescribed by law; that said Stauffer is a usurper of said office to the manifest prejudice and injury of him (Terry); that the commission issued to said Stauffer by the governor of the State, was without authority of law, therefore, null and void; that he (Terry) being the rightful person to enjoy said office, its privileges and emoluments, during the term of office as aforesaid, should be retained in the possession thereof; and, if illegally dispossessed (as in truth he has been), he should be instantly restored to the full enjoyment thereof, without hindrance or delay arising from the trespass and usurpation of the said C. W. Stauffer; that the ordinary remedy prescribed by law is too tardy to secure justice to him, and would work an irreparable injury to him; that said Stauffer show cause why the remedial and conservative writs of *quo warranto, mandamus* and injunction should not issue; the latter, upon Terry's exe-

cution of a bond, with good and sufficient security, conditioned as prescribed by law, in favor of said Stauffer; and a special prayer that said Terry be decreed to the rightful and full possession of the office of register of voters for the parish of Orleans; that he be restored to the possession thereof by said Stauffer, as well as to all the papers thereto appertaining; that said Stauffer be ordered to pay said Terry so much of the salary of said office as he may deprive him of during the pendency of this action; that said Stauffer be enjoined from acting as register of voters aforesaid, and that Terry be decreed to resume the duties of said office without further delay; and, finally a general prayer for relief in the premises.

To this petition is annexed the affidavit of Terry, that all the statements and allegations therein contained are true. On this sworn petition, Terry took a rule on Stauffer to show cause why the writs therein prayed for should not issue upon the usual conditions.

To this rule the said Stauffer filed the following exeeptions:

1. That the above petition discloses no cause of action, defendant not being a municipal officer, but an officer created by the State, and duly commissioned by the governor thereof, cannot be reached by a *quo warranto.*

2. That, being an officer of State, a writ of *mandamus* can only issue to compel the defendant to perform some duty devolving on him from the very nature of his office. The plaintiff's proceedings disclose no such state of facts.

3. That the writ of injunction is a specific writ for certain cases designated by law, and that the case at bar is not within those so designated.

4. That said writs applied for can only issue in the name of the State, while the present suit is simply *J. R. Terry* v. *C. W. Stauffer,* and not in the name of the State.

After the trial and argument of this rule and exceptions, the court refused all of these writs, from which interlocutory judgment of the court, a suspensive appeal was taken. In support of this ruling of the court, the following written reasons were assigned:

"A rule is taken by plaintiff on defendant to show cause why writs of *quo warranto, mandamus* and injunction should not issue for the restitution of the plaintiff to the office of register of voters, and the return of the records thereof. Defendant pleads by exception that plaintiff's petition discloses no cause of action to warrant the issuance of the writs prayed for. The writ of *quo warranto* is defined by Art. 867, C. P., to be an order rendered in the name of the State by a competent court, and directed to a person who claims or usurps an office in a corporation, inquiring by what authority he claims or holds such office. This mandate is only issued for the decision of disputes between parties in relation to the offices in corporations, as when a person usurps the character of a mayor of a city, and such like. With regard to offices of a public nature, that is, which are conferred in the name of the State by the governor, with or without the consent of the senate, the usurpations of them are prevented, etc." Art. 868.

"The office of register of voters is created by act of 1856, section 1, which gives to the governor the appointing power by and with the advice

of the senate. It is not, therefore, an office in any corporation; hence, the relief sought by the plaintiff cannot be obtained by the writ of *quo warranto*. The writ of *mandamus* is directed to an individual to perform some certain act belonging to the place, duty and quality with which it is clothed. Art. 829 C. P.

"The plaintiff does not ask that defendant be compelled to fulfill any of the duties appertaining to the office of register of voters, but, on the contrary, that he be prevented from performing them any longer."

"With regard to the injunction, I am of the opinion that the case is not one of those in which this writ is authorized by law. Plaintiff's rights are fully protected on the merits. For the reasons assigned, the writs applied for by plaintiff must be refused. Let the rule be discharged."

From this interlocutory order a suspensive appeal was taken.

We contend in this court that appellant was rightfully entitled to either of said writs, if not to all at the same time.

Suppose the appellant had, in the usual form, filed his petition for an injunction with the usual affidavit and bond, and had obtained an order from the court *ex parte* for a writ of injunction, and after due notice of such injunction the defendant, Stauffer, had on rule applied for its dissolution upon the face of the papers, can there be a reasonable doubt in the legal mind of this court, that the original court should have overruled the motion to dissolve?

The reverse of this proposition is equally true, that is, it would have been manifest error in the lower court to have denied either or all of said writs, upon the sworn case made by appellant.

That a writ of injunction was a proper writ upon the case exhibited by plaintiff, we cite the following law, C. P. Art. 303:

"Besides the cases above mentioned, courts of justice may grant injunctions in all other cases when it is necessary to prevent one of the parties during the continuance of a suit from doing some act injurious to the other party."

Injunction, or prohibition, is a mandate obtained from a court by a plaintiff, prohibiting one from doing an act which he contends may be injurious to him, or impair a right which he claims. C. P. Art. 296; 7 Rob. 445. In 14 An. 8, the court say: "The occupation of pilot for the port of New Orleans is lucrative, and is restricted by law to the persons specially designated by the governor of the State. It is therefore evident, that the exercise of this business by a person not legally appointed, may be prejudicial to each and every one so appointed. The petition, therefore, discloses a sufficient cause for action. 12 An. 480, 5 Rob. 367, 378.

The writ of *mandamus* should have issued. C. P. 829–832; 1 Rob. 474, 492–496, 506; 6 An. 68; 11 An. 141, 672, 693; 13 An. 289, 401–459; 12 An. 719; 4 N. S. 525; 13 L. R. 562.

The writ of *quo warranto* should have issued. 5 M. R. 271; 1 An. 162; 10 An. 420; 14 An. 505.

The general rule prescribed by law is, that the old incumbent shall continue to discharge the duties of his office until his successor is elected, commissioned and qualified, and no longer. 11 An. 293; Constant Art. 125, Act 1825 ss. 2, p. 350; 10 An. 293; 5 An. 282–536.

The governor cannot create a vacancy. 9 An, 238; 5 Rob. 367; 8 An. 295; 11 An. 486.

The commission of the executive without the authority of law is void. 14 An. 8; 5 Rob. 367.

Offices in this State are derived either from the people at the ballot box, or from the executive, under the appointing power. When derived from the ballot box, the commission of the executive is only nominal and mere evidence of title; but when originating with the governor, by virtue of the law, then the commission furnishes the right as well as the proof of title to an office. An office, by the vote of the people, can only be contested in the mode and manner prescribed by law. 5 An. 291; 12 An. 129, 366; 12 An. 719; 13 An. 89, 175, 301; 14 An. 505.

In a controversy between an incumbent and his successor, where both claim exclusively under the executive commission, the incumbent may show that the commission to his successor is void, as the governor issued it without the authority of law. 14 An. 8.

The appellee relied on act 1856, ss. 12, 13, p. 134, as authorizing the executive to remove the incumbent of the registry of voters, and appoint another at the pleasure of his excellency. True it is, the law, under certain circumstances, authorizes the governor to remove, but what circumstances, and how made known to the governor?

Articles 12 and 13 have to be construed together.

Section 12 authorizes the attorney general to sue the defaulting register of voters, setting forth the nature of the charge, etc. Convicted, the officer shall forfeit his salary or fees of office, or so much thereof, according to the gravity of his act of commission or omission, as shall be decided in the suit * * * * but said register shall have the right of appeal to the Supreme Court, and, in the meantime, the governor may suspend him from his functions, and appoint a substitute, who shall thereby assume all the powers and incur all the responsibilities of the suspended register.

Then follows section 13, which declares, "That should the gravity of the violation of the spirit and intention of the provisions of this act, in the opinion of the executive of the State, warrant the removal of such a register, he shall appoint a successor to serve out the unexpired term of four years, and such a successor, or any subsequent successors shall be liable to the same suspension or removal, at the pleasure of the executive; and the said executive shall, however, assign his reasons therefor to the senate, at the first meeting of the legislature thereafter."

Appellant contends that the meaning of these two sections taken together is simply this:

That after trial and conviction, and pending the appeal, the executive may suspend or remove. The executive is the judge as to the gravity of the charge upon which the register has been convicted.

The appellee contended, in the original court, and as he will in this, that the gravity of the violation of the spirit and intention of the provisions of the law regulating the duties of register, is a matter of inquiry to be made by the executive, *dehors* judicial proceedings, based on a charge, trial and conviction.

If this view of the law be correct, then appellant confesses he has no

TERRY
*v.*
STAUFFER.

TERRY
*v.*
STAUFFER.

farther claims to said office. But, strange to say, no such defence was plead in the defence of this action. Defendants simply plead that he was lawfully in office as register of voters, under a legal commission from the governor of the State.

*Miles Taylor and J. H. Van Dalson for defendant.*—The plaintiff alleges that he was illegally removed from the office of register of voters for the parish of Orleans, and that the defendant and appellee was illegally appointed by the governor in his place ; and he asked, in his petition, that the defendant show cause why the remedial and conservative remedies of *mandamus, quo warranto and injunction* should not issue against said Stauffer, the incumbent; and that, after due proceedings, why the defendant should not be removed and himself reinstated in said office.

A rule issued to defendant to show cause, as first stated, and to that rule the defendant excepted, as follows :

1. That the plaintiff's proceeding discloses no cause for action or complaint, the defendant being *not* a municipal officer, but an officer created by the State and duly commissioned by the governor, cannot be reached by a writ of *quo warranto.*

2. That, being an officer of the State, a writ of *mandamus* can only issue against the defendant to compel him to perform some duty devolving on him from the very nature of his office; and the plaintiff's proceeding discloses no such state of facts.

3. That the writ of injunction is a specific writ, for certain cases designated by law, and that the case at bar is not within the cases so designated.

4. That the writs applied for can only issue in the name of the State, while the present suit is simply by *J. R. Terry* v. *C. W. Stauffer,* and *not* in the name of the State.

The court *a quo* sustained the defendant's exceptions, and refused the writs prayed for, and the plaintiff appealed.

LABAUVE, J.    J. R. Terry, the relator, states that, on or about the 10th June, 1865, he was in the lawful possession and enjoyment of the office of register of voters for the parish of Orleans, and that he was forcibly dispossessed by C. W. Stauffer, under the pretext that he, said Terry, was legally removed therefrom, and the said Stauffer duly commissioned therefor, by the Governor. The relator states that he is entitled to the said office, claims to be put in possession, and the said Stauffer ordered to deliver said office. He prays that said C. W. Stauffer do show cause why the remedial and conservative writs of *mandamus, quo warranto* and injunction should not issue.

The defendant answered as.follows, by way of exceptions :

1. That the plaintiff's proceeding discloses no cause of action or complaint, the defendant not being a municipal officer, but an officer created by the State, and duly commissioned by the Governor, cannot be reached by a *quo warranto.*

2. That, being an officer of the State, a writ of *mandamus* can only issue against the defendant to compel him to perform some duty devolving on

him from the very nature of his office; the plaintiff's proceedings disclose no such state of facts.

3. That the writ of injunction is a specific writ, for certain cases designated by law, and that the case at bar is not within those designated.

4. That the writs applied for can only issue in the name of the State, while the present suit is simply by *J. R. Terry* v. *C. W. Stauffer*, and not in the name of the State.

And should these exceptions be overruled, then the defendant pleads a general denial, and avers that he is legally appointed register of voters for the city of New Orleans, etc.

He concludes by praying that the rule may be set aside, and that plaintiff pay costs.

The court sustained the exceptions, and the relator took this appeal.

1. This is not a case for the writ of *quo warranto*, upon the face of the petition. According to Art. 867 C. P., the writ of *quo warranto* is an order rendered in the name of the State, by a competent court, and directed to a person who claims or usurps an office in a *corporation*, inquiring by what authority he claims or holds such office. Art. 868, C. P. This mandate is only issued for the decision of disputes between parties, in relation to the offices in *corporations*, as when a person usurps the character of *mayor of a city*, and such like.

With regard to offices of a public nature, that is, which are conferred in the name of the State, by the Governor, with or without the consent of the Senate, the usurpations of them are prevented and punished in the manner directed by the penal code.

Article 869 C. P. A mandate to prevent the usurpation of an office in a *city* or other *corporation*, may be obtained by any person applying for it.

The Article 870 C. P. provides that the court, after having declared the party not qualified, shall direct the corporation to proceed to a new appointment.

The office of register of voters is created by the act of 1856, section 1, which gives the Governor the appointing power, by and with the advice of the senate; therefore, it is clear that the register of voters is a State officer, and not such an officer as contemplated by the provisions of the articles above quoted.

2. The petition does not show that the relator is entitled to the writ of *mandamus*, which, according to Art. 829 C. P. is an order issued in the name of the State, by a tribunal of competent jurisdiction, and addressed to an individual or corporation, or court of inferior jurisdiction, directing it to perform some certain act, belonging to the place, duty, or quality with which it is clothed.

The relator does not ask that the defendant be directed to do some certain act ; but he demands, on the contrary, that he be forbidden to perform the functions of his office as Register of voters.

3. The injunction prayed for presents some more serious difficulties.

An injunction is said to be a mandate obtained by plaintiff, prohibiting one from doing an act which, he contends, may be *injurious* to him, or *impair* a right which he claims. C. P. Art. 296. It is a conservatory

act—an equitable remedy—which a party may obtain provisionally, on bringing his action (C. P. Art. 208) ; and, in order to obtain it, the party applying for the same must *state under oath the facts which*, according to his belief, *render an injunction necessary.* C. P. Art. 304. The judge must look to the facts alleged and sworn to, and, in the exercise of his judgment, see if the facts are sufficient to require his interference to prevent an injury to the applicant, or an act that might impair his right. The judge below said : " With regard to the injunction, I am of opinion that this case is not one of those in which the writ is authorized by law." We are not prepared to say that our learned brother erred. The defendant is exercising the functions of register of voters in and for the parish of Orleans ; he is, under the law, a State officer. The relator claims the office, and, at the same time, prays that, during the pendency of this suit, the said C. W. Stauffer be enjoined from acting as register of voters, as aforesaid ; but we see in his petition no facts sworn to, going to show that he would suffer an injury, or that his right would be impaired, by said Stauffer continuing to exercise his official functions pending the writ. It should require the strongest showing, on the part of a private individual, to induce a judge to enjoin a State officer from performing his functions ; and we are not prepared to say that it can be done in any circumstance.

The effects of such injunction would reflect upon and affect materially the government, and might stop, in certain cases, the governmental machinery.

We are of opinion that the District judge did not err.

The judgment appealed from is affirmed, with costs.